### ADAMS *et al. v.* HANNAH.

In view of the entire record, the trial judge was authorized to deal with the petition as a proceeding instituted by the plaintiff in her representative capacity as administratrix upon the estate of her deceased husband. This being so, there was not, under the evidence submitted, any abuse of discretion in appointing a receiver; but the order of the judge, in so far as it authorized the receiver to take possession of the individual property of the surviving partner, was too comprehensive, and direction is given that this order be so modified as to confine the possession of the receiver to the partnership assets.

November 15, 1895.

Petition for injunction and receiver. Before Judge Griggs. Terrell county. June 3, 1895.

Mrs. Lizzie Hannah brought her petition against B. C. Adams (doing business as the Dawson Variety & Manufacturing Co.), the First State Bank of Dawson, and J. R. Mercer, praying, among other things, for a receiver of the property of said Dawson V. & M. Co., and for injunction restraining Adams from longer attempting to run or manage the business, and restraining the bank and Mercer from foreclosing a mortgage he had given on the property used in the same. The prayer for injunction against the bank was denied; but the court appointed a receiver to take charge of all the property of Adams, to continue the busi-

ness, to employ necessary labor and contract for necessary material for carrying on the same, and to make sales, employing Adams to assist him at a salary of $100 per month, etc. To this judgment Adams excepted.

The petition alleges, that prior to the death of plaintiff's husband, T. R. Hannah, he and Adams were partners and joint owners of the property in question. She became her husband's administratrix. In the fall of 1893 or early winter of 1894, Adams came to her and proposed to buy out the interest of Hannah in said business and property; he proposed to give her $8,000 for said half-interest, and wanted her to make him a deed to the same for a stated consideration of $12,000. Not being used to the transaction of business, she agreed to do so, not knowing why he wished to have the papers written in that way. He made many protestations of his honest intentions, and what he intended to do; that he would keep up the business to its old standard; that he would pay all the debts, and so manage it that there would be no danger of loss to her. She agreed to sell, and took the necessary steps to perfect the title in him, and he gave her his four promissory notes of $2,000 each, payable in the fall of 1894, 1895, 1896 and 1897. At the same time he gave her a contract or agreement that, should he fail to pay any of said notes at maturity, they should all thereupon become due at her option. On December 22, 1894, one of the notes became due, and he wholly failed and refused to pay it, and continues so to refuse. At the time of her husband's death, an inventory was made of said property, and it was found that the assets of said firm amounted to over $50,000, consisting of real estate and outside personal property, and material, lumber and manufactured articles on the grounds of the plant. Ever since that day Adams has had sole control and management of said property. He has so managed and carried on the business that (January 28, 1895) there is no material with which to work; the credit

of the concern is gone; he is every day becoming more and more involved, and is indebted to his laborers as well as to outside creditors; and it is only a question of a short time when the business will be a total wreck and wholly unable to pay its liabilities. The property has so depreciated by his management that it is not now worth more than ten or fifteen thousand dollars. During the lifetime of Hannah, he and Adams made and delivered to Mercer a mortgage to secure $5,000 on this property. Petitioner does not know the consideration of the mortgage, whether it was for money then due or to be obtained. Mercer transferred it to the bank (of which he was president). Soon afterwards Hannah and Adams as a firm contracted to rebuild the Andrew Female College, the amount due them on this account being $2,500 or other large sum. The claim was transferred to Mercer or the bank, and ought to go as a credit on the mortgage last mentioned. At the last term, plaintiff proceeded to foreclose her mortgage for the full amount thereof, and the bank proceeded to foreclose its mortgage for $5,000 with interest. Instead of putting the college claim as a credit on said mortgage, Mercer and the bank and Adams, acting in collusion, are attempting to defraud plaintiff by pretending to put it as a credit on the individual indebtedness of Adams to said parties. Within the last six weeks Adams has given Mercer or the bank another mortgage on the property, for $5,000 or other large sum. Adams is a trader engaged in buying and selling building material, and is also a manufacturer of over $5,000 worth of goods per annum. He is insolvent. Her claim against him of $8,000 with interest, amounts to more than one third of his debts. She asks that Mercer and the bank be required to make full showing as to the character and amount of indebtedness under which they obtained the mortgage for $5,000 against Hannah and Adams; the amounts received and yet due on the college claim, and the application of any collection made thereon;

and that Adams be required to make full showing as to the amounts paid by him on indebtedness he assumed of the late firm, and all collections on amounts due them, from the time of Hannah's death until now. In other respects discovery is waived. By amendment she alleges, that ever since Adams took possession of the property, he has been collecting debts due the old firm, and appropriating the same to his own uses and purposes. He has kept the books in such manner as to be able to deceive any ordinary person, has not given credits where money has been paid to him, and has not credited material which has been paid to him in settlement of debts due the old firm. Property he has received in payment of debts due the old firm has been so covered that creditors could not reach it, by putting title in his wife's name; and other moneys and materials have been forwarded to Atlanta and there delivered to a corporation or firm of which Adams is a member, of which no notice has been given to the old firm of Hannah and Adams; all for the purpose of defrauding his creditors, and especially plaintiff.

Defendants demurred to the petition, for want of equity, for multifariousness, and for misjoinder of parties defendant. The answer of Adams alleged: He did not propose to buy the interest of plaintiff's intestate, but she proposed to sell to him and urged him to buy, and at one time offered to take $6,000, which offer he was considering, but at the instance of her kinsman, Young, she afterwards declined and then insisted on defendant buying at $8,000, which he did on the terms hereafter stated. She and he both were anxious that a half-interest in the business might be disposed of for cash, and several parties from abroad were negotiating with him to this end; and it was mutually agreed between him and her, that the consideration to be set forth in the contract of sale by her to him should be $12,000. In event he had succeeded in making a sale of a half-interest or more, it was understood that she

should be paid $8,000 for the interest of Hannah in the entire property of the late firm, and defendant was to assume all of the firm's liabilities. He made no protestations of honest intentions and what he intended to do, except such as he has carried out; and he has so managed that there has been and is no danger of loss to plaintiff. While it was stipulated, in the mortgage he gave her to secure the notes, that a failure to pay any one of them at maturity would cause all to become due, yet such result depended on circumstances; and a contemporaneous writing was executed by her and him, showing what was the true meaning and purpose of both parties; by the terms of which he insists that all of the notes have not become due and payable. The note which fell due on December 22, 1894, was not paid by him, because he was reliably informed that she had avowed it to be her purpose to institute legal proceedings against him and break him up whether he paid this note or not. He was making arrangements to pay it, when it came to his knowledge what she contemplated doing; and he deemed it impolitic and unjust to himself to furnish her money with which to set on foot legal proceedings to hamper and embarrass him, when he had given her no cause therefor. Nearly half of the $50,000 at which the assets of the late firm were appraised on Hannah's death, was made up of a vast lot of accounts and notes long past due and of very uncertain and doubtful character; the great bulk of which have not been and cannot be collected, and are valueless. In the appraisement was also a very large quantity of very old lumber which the appraisers doubtless thought was of better quality than it actually was; it was nearly worthless, and could not be used at all. Said property was all appraised at high prices, in view of its age and real qualities, and it was not actually worth anything like the amounts figured up in said inventory. Defendant denies the allegations touching lack of material to work, and of credit, deprecia-

tion of property, etc., and says there are more manu-
factured goods now on hand than were at the time of his
purchase; there is on the premises a large quantity of
material amply sufficient to meet all the requirements of
the business; and fresh supplies and material are con-
stantly being received by him.    He has caused the value
of the property to be enhanced, and since he became sole
owner he has expended large amounts in its improvement
and enlargement and by erecting new buildings, amount-
ing to $2,205, a statement of which is attached to his
answer.    The mortgage for $5,000, given by him and
Hannah, was made to secure valid and *bona fide* indebted-
ness, and the same has never been paid, as he has been
endeavoring to pay other more pressing indebtedness; and
this debt being amply secured, the holder of the mortgage,
in view of the financial stringency of the times, was will-
ing to allow further time to pay off the mortgage, especially
since defendant had given to the bank, the holder of said
$5,000 debt, additional security by mortgaging to it a
large quantity of other property.    As to the college con-
tract, the late firm had a lien for material furnished to the
amount of $2,067.99 besides interest.    The lien was fore-
closed in May, 1894; execution issued and was levied on
the property, but litigation arose and the money was not
collected.    Defendant afterwards transferred the judg-
ment and execution to Mercer to indemnify him as surety
on a bond to L. Ruggles, given by defendant, for $846 for
eventual condemnation money on a lien foreclosure, which
is undetermined; also as surety on a bond to dissolve gar-
nishment in the suit of L. Ruggles against defendant; and
to secure a note for $1,478.21, executed by defendant to
Mercer for valid and *bona fide* indebtedness.    He denies
the validity of Ruggles' suit, and is contesting it.    He
denies that plaintiff had any right to foreclose her mort-
gage for all of the $8,000, because only one of the notes
was due.    He denies that he is acting in collusion with

Mercer and the bank or with any one else or in any way to defraud and wrong plaintiff. It is not true that within the six weeks before the filing of the petition, he gave Mercer or the bank another mortgage on the property for $5,000 or other large sum. He denies that he is insolvent, or that plaintiff has any right to injunction and receiver. He does not concede her right to the discovery prayed against him; but if the court holds otherwise, he has prepared a detailed statement of all disbursements and receipts, which will disclose that he has settled $11,362.22 of the debts of the late firm, and has collected only $3,670.82 on the notes and accounts. At the time he received conveyance from plaintiff of the half-interest, he executed in favor of Hannah's estate a mortgage on all the property, to indemnify the estate against loss should he fail to pay the partnership debts assumed by him. She has this mortgage in her possession. Since he became sole owner of the property all industries throughout the entire country have languished; business of every kind has been depressed; especially is this true of the kind of business in which he has been engaged, there being little demand for building material, and few contracts for constructing houses; but he has kept the business running, has used every effort to maintain and successfully conduct it, and is progressing as well as could be done by any one. If allowed to continue, he believes he will be able to successfully operate the enterprise in which he has his all invested and in which he has incalculable interest, and will thus be in position to satisfy plaintiff's claim.

It seems unnecessary to set out here the answers of the bank and of Mercer. It appears that on April 2, 1895, the Andrew Female College claim was settled by the bank on what were deemed by it the best possible terms: $1,700 cash, and $700 in bonds issued by the trustees of the college. At the hearing there was much evidence of conflicting character, introduced in support of the allegations

of the petition and answer; including numerous affidavits, books of account, records of suits, tax digest, appraisement of Hannah's estate, mortgages referred to in the pleadings, etc. Plaintiff introduced the agreement of March 13, 1894, between herself and Adams, referred to in his answer. It recites, that he has this day executed to her his mortgage covering all the property, real and personal, which belonged to the Dawson Variety Mfg. Co., to secure four promissory notes for $2,000 each, dated March 13, 1894, and due December 22, 1894, 1895, 1896 and 1897, given for the purchase price of one half-interest in said property; that it is a stipulation and agreement in connection with said mortgage, that should Adams fail to pay any of said notes as they fall due, all of them shall instanter become due and payable; and that now Mrs. Hannah, the payee, "makes and enters into this contemporaneous writing, and agrees and stipulates that said agreement or contract that all of said notes are to be due on failure to meet any one thereof, was made to protect her; and she agrees that she will not take advantage thereof, or claim the privilege of foreclosing for all of said notes on failure to pay any one thereof, unless by the bad management of said property or failure to work or run the same, or the insolvency of said Adams, or the commencement of proceedings against him by his creditors, her rights should be jeopardized; on which event she would claim the right to enforce all the parts of said mortgage contract." The mortgage of March 13, 1894, "to indemnify Mrs. Lizzie Hannah, administratrix, against any loss by reason of my failure to pay said debts and liabilities," referred to in defendant's answer, recites that he has this day bought the half-interest of Hannah, deceased, in all the real and personal property owned by them jointly known as the Dawson Variety Mfg. Co., for $8,000, payable in four annual installments of $2,000 each, secured by mortgage on all said property, and the further con-

sideration that he is to assume and pay all the debts and liabilities of said company. It creates a lien on all said property, describing it, and on two other town lots. It contains a waiver of homestead, and concludes: "to be void on the full satisfaction of all damages and loss occurring by the failure of B. C. Adams or his assigns to pay all of said debts and liabilities." It was recorded March 29, 1894.

*J. G. Parks, E. J. Hart* and *Harrison & Peeples*, for plaintiffs in error. *J. H. Guerry* and *J. A. Laing*, contra.

LUMPKIN, Justice.

We have directed the reporter to prepare and prefix to this opinion a condensed statement of so much of the record as may be essential to an understanding of the points ruled.

Under the facts it is surely safe to say that there was no abuse of discretion in appointing a receiver, if the petition of Mrs. Hannah can be treated as one filed in her representative capacity as the administratrix upon the estate of her deceased husband. Regarding it as a petition filed in her individual right, the propriety of appointing a receiver at her instance would present quite a serious and difficult question; but, in view of the entire record, we think the judge was authorized to deal with the petition as a proceeding in behalf of the administratrix. This being so, there is no difficulty in sustaining the action taken by the judge, except as to so much of the order passed by him as authorized the receiver to take possession of the individual property of B. C. Adams, the surviving partner of the Dawson Variety and Manufacturing Company. To this extent, the order was too comprehensive, but appropriate direction has been given for its correction in this respect. Beyond this, we see no further occasion for interference on our part with the judgment as rendered.

*Judgment affirmed, with direction.*